**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ROOSEVELT KENNEDY,**

    **Plaintiff,**

**vs.**                                                                  **Case No. 4:05cv248-WS/WCS**

**MONICA DAVID, et al.,**

    **Defendants.**

    _____/

## REPORT AND RECOMMENDATION

Pursuant to court order, doc. 13, Defendants filed an amended Answer to the *pro se* Plaintiff's § 1983 civil rights complaint. Doc. 14.[1] The amended Answer was construed as a summary judgment motion and Plaintiff was advised of his obligation to respond to the motion in accordance with Rule 56. Docs. 13, 15. Plaintiff responded to the summary judgment motion by filing a "motion to dismiss Defendants motion for summary judgment, and motion for summary judgment in favor of Plaintiff." Doc. 20. Defendants have not filed any response to this document filed by the *pro se* Plaintiff.

---

[1] The amended Answer was required because Defendants had not properly referenced quotations from prior orders of this Court. Doc. 13. The amended Answer, doc. 14, is virtually identical with the Answer, doc. 12. Although Defendants did not resubmit the previously filed exhibits with the amended Answer, those exhibits are referenced and should be referred to when reviewing the amended Answer, doc. 12.

**Allegations of the complaint**

Plaintiff began serving a life sentence on May 7, 1976.  Doc. 1, p. 7.  At that time, he was eligible for parole consideration after serving one year in prison, and was eligible for annual parole reviews thereafter.  *Id.*  Plaintiff was eventually released on parole in 1999, subject to supervision for the remainder of his life.  *Id.*  Plaintiff asserts that his parole was revoked "for technical violations" on April 10, 2002.  *Id.*  His next parole hearing was scheduled for June, 2004, and he was given a presumptive parole release date of June, 2005.  *Id.*

Following Plaintiff's parole hearing on May 4, 2005, the Defendant Parole Commissioners (Pate, Dunphy, and David) refused to authorize Plaintiff's effective parole release date.  *Id.*, at 8.  Plaintiff's presumptive parole release date of June 4, 2005, was suspended and Plaintiff's next hearing date for parole eligibility was set for five years in the future.  *Id.*  Plaintiff contends the Parole Commissioners have retroactively applied rules to him which were not in effect when he was sentenced and violate the Ex Post Facto and Due Process clauses of the United States Constitution, as well as the Eighth Amendment's prohibition against excessive punishment.  *Id.*, at 8-10.  Plaintiff seeks declaratory and injunctive relief, and seeks an order requiring Defendants to provide Plaintiff with annual parole reviews.  *Id.*, at 9.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

     Plaintiff may move for summary judgment, with or without supporting affidavits, upon all or any part of his or her claim.  Fed. R. Civ. P. 56(a).  Summary judgment shall be granted in favor of Plaintiff "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A claimant is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient."  10B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2734 (1983).

**The relevant Rule 56(e) evidence**

Plaintiff has stated that he agrees "that the Defendants['] factual allegations are true and that they tell the whole story."  Doc. 20, p. 2.  Plaintiff was convicted in 1976 of three crimes: (1) robbery with a gun or deadly weapon (case 75-2193) and sentenced to 20 years; (2) robbery with a gun or deadly weapon (case 75-4810) and sentenced to life in prison, consecutive with the above sentence; and (3) sexual battery with a weapon (case 75-4797), sentenced to life in prison, concurrent with the first life sentence.  Doc. 14, p. 2; *see also* ex. A.[2]  Plaintiff was released on parole on February 3, 1999, subject to certain restrictions listed on the certificate of parole for the remainder of his life.  Ex. B.  On April 10, 2002, the Parole Commission revoked Plaintiff's parole for violating three of the conditions of his release.  Ex. C.[3]

At the Parole Commission meeting held on October 2, 2002, Plaintiff's new presumptive parole release date was set for June 4, 2005.  Doc. 14, p. 2; ex. D.  Plaintiff had a subsequent parole interview (a biennial review) two years later on June 11, 2004.  Ex. E.  At the Commission meeting on August 4, 2004, the Commission affirmed the hearing examiner's recommendation to make no change in the presumptive parole release date (PPRD).  Ex. E.  Thus, Plaintiff's PPRD remained set for June 4, 2005, and he was scheduled to be re-interviewed during March of 2005.  Ex. E.

---

[2] All exhibits referenced are to the documents attached to the original answer and motion for summary judgment, document 12.

[3] Specifically, Plaintiff was found to have unlawfully operated a motor vehicle while under the influence, failed to make a full and truthful report to his parole officer in August, 2001, and changed his residence without first securing the permission of his parole officer.  Ex. C, p. 1.

On March 11, 2005, Plaintiff was interviewed for his effective parole release date. Ex. F.  However, on April 13, 2005, the Commission decided *not* to authorize his effective release date and re-docketed Plaintiff's case for an extraordinary review in May of 2005.  Ex. F (this exhibit is found on page 2 of Exhibit E).

At the May 4, 2005, commission meeting to consider Plaintiff's "extraordinary review," the Commission "decided NOT to authorize [Plaintiff's] Effective Parole Release Date."  Ex. G.  The Commission decision states that the Commission was "unable to find that there [was] a reasonable probability that, if [Plaintiff was] released on parole, [he would] live and conduct [himself] as a respectable and law-abiding person and that [his] release [would] be compatible with" Plaintiff's welfare as well as society's welfare.  *Id.*  That decision was based on review of Plaintiff's criminal history, the pre-sentence investigation reports, his record in the Department of Corrections,[4] and mental health evaluations.  *Id.*  Plaintiff's records reveal that he minimized the role of alcohol in committing the sexual battery, asserted that it was consensual sex, and denied that he committed the offense.  *Id.*  The Commission concluded that Plaintiff was in need of further treatment, and that he had not demonstrated an ability to abide by the conditions of parole.  *Id.*  The Commission also found Plaintiff had "little insight or motivation to change" and believed Plaintiff would continue using alcohol if released.  Indeed, Plaintiff's Department of Corrections records reflect he was not permitted to take a 1988 rehabilitation program because of "his lack of motivation for treatment and his denial for accepting responsibility for the sex offense."  *Id.*, at 3.

---

[4] Plaintiff had quite a few disciplinary reports while in prison; several of which were for threatening staff and having a weapon.  Ex. G, pp. 2-3.

Plaintiff's presumptive parole release date of June 4, 2005, remained suspended, and Plaintiff was scheduled for his next "extraordinary interview during the month of January, 2010," a date five years in the future.  Ex. G, p. 1.  The Commission stated that the interview would be within five years rather than two based on Plaintiff's sexual battery conviction and the finding that it was "not reasonable to expect that" Plaintiff would be granted parole during the interim five-year period.  *Id.*  In support of that decision the Commission noted that Plaintiff used a firearm when committing his crimes, caused both physical and psychological trauma to the victim, had an escalating or continuing pattern of criminal conduct, and concluded that his release might "pose a risk to others."  *Id.*

**Analysis**

As noted above, the facts are undisputed.  It is also without dispute that well established law mandates the entry of summary judgment in Defendants' favor on Plaintiff's due process claim.  Florida's parole system leaves the decision of whether or not to grant parole "to the discretion of the [Parole] Commission . . . ."  Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Moore v. Florida Parole & Probation Comm'n, 289 So. 2d 719 (Fla. 1974).  "There is no constitutional right to parole in Florida."  Jonas, 779 F.2d at 1577, *citing* Hunter v. Florida Parole & Probation Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982).[5]  In Hunter v. Florida Parole & Probation Commission, the Court rejected a claim that the Commission improperly calculated a presumptive parole release date and, thus, violated due

---

[5] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right."  FLA. STAT. § 947.002(5).

process, holding that because there was no liberty interested in parole, there was no due process violation.  Hunter, 674 F.2d at 848.

It is true that prisoners may "claim the protections of the Due Process Clause." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974). However, due process exists to protect a liberty interest.  Because Plaintiff cannot assert the deprivation of a liberty interest as there is no right to parole, the due process claim must fail as a matter of law.  Defendants are entitled to summary judgment on the due process claim.

To violate the Ex Post Facto Clause, a new statute must inflict "a greater punishment, than the law annexed to the crime, when committed."  Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997), *quoting*, Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798).  An ex post facto law must (1) "apply to events occurring before its enactment" and (2) "disadvantage the offender affected by it" by "altering the definition of criminal conduct or increasing the punishment for the crime." *Id.*, 519 U.S. at 441, 117 S. Ct. at 896, *quoting* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).  The issue is "whether [the new law] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  California Dep't of Corrections v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603, 131 L. Ed. 2d 588 (1995).

To the degree that Plaintiff was returned to prison in 1999 to continue serving his prior convictions from 1976, the amended statute[6] was admittedly retrospectively

---

[6] The statute governing the length of time between parole hearings was amended in 1978, Ch. 78-417, and became effective on July 1, 1978.  Ch. 78-417, § 24, at 1385, Laws of Fla.  The 1978 law was amended again in 1997 and under these current

applied to Plaintiff.  There is no dispute about that, or about whether Plaintiff is properly subject to this statute.[7]  The sole issue is whether application of this law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." As recast by Morales, "[i]f a delay in parole hearings raises ex post facto concerns, it is because that delay *effectively increases* a prisoner's term of confinement . . . ." Morales, 514 U.S. at 509, n.4, 115 S. Ct. at 1603, n.4 (emphasis added).

Historically, Florida's parole statutes required an initial interview within one year of incarceration, and annual reviews thereafter.  Following the initial interview, the inmate would be given a presumptive parole release date.  In 1978, however, the Florida legislature amended the statute and deleted the requirement that after the initial interview, "the inmate shall be interviewed for parole at periodic intervals not less often than annually."  *Id.*  An entirely new section was created instead which provided:

> For any inmate whose presumptive parole release date falls more than 2 years after the date of the initial hearing date, a hearing examiner panel shall schedule a hearing for review of the presumptive parole release date.  *Such hearing shall take place within 2 years after the initial hearing and every 2 years thereafter*.  Such hearing shall be limited to determining whether or not information has been gathered which might affect the presumptive parole release date.

Ch. 78-417, § 15, at 1382, Laws of Fla. (emphasis added); FLA. STAT. § 947.174(1) (1979).  The 1978 Act permitted the Commission, at any time and for "good cause," to request a subsequent hearing.  FLA. STAT. § 947.174(2) (1979).  Thus, the Commission had discretion to conduct parole reviews earlier.

---

provisions, the Commission may delay parole hearings for up to five years for certain categories of offenders.  FLA. STAT. § 947.174 (2001).

[7] Plaintiff's conviction for sexual battery brings him within the provisions of five year parole hearings.  FLA. STAT. § 947.174(1)(b) (1997).

Case No. 4:05cv248-WS/WCS

In 1997, the parole statutes were amended again. This change, as applicable to Plaintiff, now provides:

> For any inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing. For any inmate who is within 7 years of his or her tentative release date, the commission may establish an interview date prior to the 5-year schedule.

FLA. STAT. § 947.174(1)(b) (1997). The statute still allows the Commission to request a subsequent hearing at any time. FLA. STAT. § 947.174(4) (1997).[8]

The California parole regulations considered in Morales made prisoners eligible for annual reconsideration if parole was denied at the initial parole consideration hearing. 514 U.S. at 503, 115 S. Ct. 1597. The legislature amended the regulation to "defer subsequent suitability hearings for up to three years if the prisoner has been convicted of 'more than one offense which involves the taking of a life' and if the Board 'finds that it is not reasonable to expect that parole would be granted at a hearing during the following [two] years and states the bases for the findings.' " 514 U.S. at 503, 115 S. Ct. at 1600. The Supreme Court found it significant that the new California statute applied "only to a class of prisoners for whom the likelihood of release on parole [was]

---

[8] A state challenge was raised to the 1997 version of Florida's parole statute, § 947.174, at issue here. See Tuff v. State, 732 So. 2d 461 (Fla. 3d DCA 1999). In holding that the statute did not violate the Ex Post Facto Clause, the court pointed out that the Florida statute "affords the procedural safeguards mentioned in Morales." Tuff, 732 So. 2d at 463.

quite remote." 514 U.S. at 510, 115 S. Ct. at 1603. It also found the law was "carefully tailored" because (1) it had no effect on the date of a prisoner's initial parole suitability hearing, affecting only the timing of subsequent hearings; (2) inmates were given a full hearing as to whether it was "not reasonable to expect that parole would be granted at a hearing during the following years;" (3) the parole board had to state its findings on that question in writing; and (4) the board still had discretion to alter the frequency of parole hearings. 514 U.S. at 511-512, 115 S. Ct. at 1604. From this the Court concluded:

> In light of the particularized findings required under the amendment and the broad discretion given to the Board, the narrow class of prisoners covered by the amendment cannot reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings.

514 U.S. at 512, 115 S. Ct. at 1604. The Court determined that the new law "create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," 514 U.S. at 514, 115 S. Ct. at 1605, and, thus, did not violate the Ex Post Facto Clause.

In reversing the Eleventh Circuit in Garner v. Jones, the Supreme Court advised that courts must undertake a "rigorous analysis of the level of risk created by the change in law." Garner v. Jones, 529 U.S. 244, 120 S.Ct. 1362, 1370, 146 L. Ed. 2d 236 (2000), reversing 164 F.3d 589 (11th Cir. 1999). To do so, a court must be presented with "information bearing on the level of risk" and that absent such knowledge, any ex post fact claim would merely be speculative. *Id.,* at 1371-72. It is Plaintiff's obligation in responding to Defendants' summary judgment motion to provide the Court with that information. However, Plaintiff has not shown that his prospect for release on parole would arrive any sooner if he were given more frequent hearings.

While the statute at issue here applies to a broader category of inmates than was the case in Morales, the statute is still tailored towards those inmates who have committed serious, violent crimes and face lengthy periods of incarceration. There is no inherent risk that simply extending the time between parole hearings necessarily extends an inmate's period of incarceration. See Garner, 120 S. Ct. at 1368.

When setting subsequent parole hearings and a presumptive parole release date, the Commission holds a hearing on the matter and fully considers Plaintiff's criminal history, his institutional adjustment, psychological reports, and makes a determination about his suitability for parole release. Here, the Commission noted Plaintiff's problematic institutional adjustment, his continued problems in complying with rules and controlling aggression as illustrated by the disciplinary reports he received. The Commission considered Plaintiff's mental state, his denial of committing the sexual battery, minimizing the role alcohol played, and the fact that he was asserting it was consensual sex despite his guilty plea to the charge. The Commission found Plaintiff was not motivated to change or better himself. In light of his unwillingness to address the behaviors that led to his incarceration, the Commission determined that Plaintiff was not suitable for release within the next five years, Then, pursuant to FLA. STAT. § 947.174(3), the Commission stated its findings on the record and Plaintiff was provided a copy of those findings.

Also noteworthy is the fact that the Commission has discretion to establish a parole hearing date earlier than five years. FLA. STAT. § 947.174(2). The Commission *could* have set Plaintiff's parole hearing earlier if it chose to do so, but in this case, the

determination was made that it was "not reasonable to expect that" Plaintiff would be granted parole with five years.

Because parole hearings are based on a clearly stated finding that Plaintiff would not be granted parole in the interim period, the challenged statute has not been shown to extend the date of Plaintiff's parole. Rather, the statute alters only the timing of subsequent parole hearings, saving the Commission time and expense.

Plaintiff has not come forward with argument or evidence showing that his incarceration is lengthened by the delay in parole consideration hearings, or that it is likely he would be paroled within the five year delay between parole hearings. On this record, any such finding would be speculative. Plaintiff contends he had an expectation to receive annual parole interviews, but that does not alter the fact that Plaintiff could not *reasonably* expect to be released from prison at any given time. The controlling factor here is not whether Plaintiff's expectation to be interviewed or considered for parole was harmed, but whether increasing the time between those reviews inflicted greater punishment on Plaintiff, or increased his incarceration. That showing has not been made. Plaintiff contends that there was a remote possibility at each parole hearing that he would be found suitable for release. Doc. 20, p. 5. That argument, however, falls short of showing more than a "speculative and attenuated risk of increasing the measure of punishment." Plaintiff has not shown that he would be released sooner if interviewed every year during the intervening years rather than interviewed just once in five years. Simply arguing that there is greater time between parole interviews is not sufficient, *see* doc. 20, p. 6, as is evident from Morales, *supra*.

Plaintiff has continued to demonstrate his propensity for committing offenses and not obeying the law or abiding by the rules governing his release from prison.  Plaintiff's release may reasonably be viewed as causing an unreasonable risk of harm to others. Defendants' evidence has demonstrated that delaying parole hearings for Plaintiff has not worked to his disadvantage or increased the measure of punishment.  Plaintiff has not rebutted that evidence and, thus, Plaintiff's ex post facto claim must fail.

One additional point is worth mentioning.  In responding to Defendants' summary judgment motion, Plaintiff has argued that current Parole Commission rules and procedures provide that if an inmate is not released on parole, he is to be scheduled for his next extraordinary interview "within two years from the date of the effective parole release date interview," which would be on a biennial schedule.  Doc. 20, p. 4; *see* Plaintiff's exhibit A.[9]  Plaintiff contends Defendants are violating their own rules by setting his extraordinary review for five years in the future.  Doc. 20, p. 4.

It is noted that Plaintiff only generally claimed that Defendants used rules and procedures which were not in place when his crime was committed.  Plaintiff did not cite to a specific statute or rule.  Doc. 1.  In the past, these cases have focused on the Florida statute which provides for the five year parole hearings, not an administrative rule.  Nevertheless, this claim is now specifically raised in Plaintiff's response to summary judgment, doc. 20, and Defendants have not responded to this claim. Nevertheless, the claim has been considered.

---

[9] This exhibit cites to FLA. ADMIN. CODE R. 23-21.0155(3) which states: "The determination, on extraordinary review, that an inmate is not eligible for parole release shall have the effect of overriding his guideline-determined presumptive parole release date however, the inmate shall continue to receive extraordinary interviews on a biennial basis."

Pursuant to Rule 23-21.0155, which governs extraordinary review procedures, if the Commission denies the inmate release on parole, the administrative rule provides that he should be scheduled for his next "extraordinary interview within two years from the date of the effective parole release date interview."  FLA. ADMIN. CODE R. 23-21.0155(3).  That same subsection goes on to provide that when the inmate is deemed not eligible for parole release on extraordinary review, that decision will override a PPRD and the "inmate shall continue to receive extraordinary interviews on a biennial basis."  Id.  Another subsection of Rule 23-21.0155 also states that "[e]ach extraordinary interview shall be completed no later than two years after the inmate's last effective or extraordinary interview."  FLA. ADMIN. CODE R. 23-21.0155(4).  The Commission must then conduct an extraordinary review to determine whether he "is eligible for parole release and whether or not to authorize an effective parole release date."  FLA. ADMIN. CODE R. 23-21.0155(4).  Once again, if the inmate is refused release on parole, "the Commission shall schedule a subsequent extraordinary interview to be conducted no later than two years from the date of the last extraordinary interview."  FLA. ADMIN. CODE R. 23-21.0155(6).  These "extraordinary interviews and reviews shall . . . continue until the Commission finds the inmate to be eligible for parole release or he otherwise satisfied his term of incarceration."  FLA. ADMIN. CODE R. 23-21.0155(6).

Pursuant to the clear procedures outline in this administrative rule, it would appear that Plaintiff should have been scheduled for another extraordinary review within two years of the May 4, 2005, commission meeting.  That last meeting was an "extraordinary review," yet Plaintiff's next review is set for five years in the future.  Thus,

Plaintiff appears correct in arguing that the Commission is not complying with its own rules.

However, as noted above, because Plaintiff does not have a right to parole, he does not have a protected right in the procedures used to determine parole eligibility or make those decisions.  Thus, Plaintiff does not present a due process claim for which relief may be granted.[10]  Moreover, even assuming Plaintiff *should* be scheduled for parole review in two years based on the administrative rule rather than in five years pursuant to the statute, Plaintiff *still* has not shown that this delay violates his rights under the Ex Post Facto clause.  There simply is no evidence of a significant risk that Plaintiff's punishment has been increased.  Summary judgment should be granted in favor of the Defendants.

Finally, Plaintiff has attempted to assert an Eighth Amendment claim for "excessive punishment."  Summary judgment should be granted in Defendants favor on this claim as well.  Plaintiff was given two life sentences, to be served concurrently.  The Parole Commission's decision to continue Plaintiff's incarceration is not excessive punishment.  Rather, it is within the sentence originally imposed on Plaintiff.  Nearly thirty years after sentencing, Plaintiff may not challenge his criminal sentence in a civil rights action.

---

[10] Plaintiff may have a remedy pursuant to state law.  <u>Williams v. Florida Parole Commission</u>, 928 So. 2d 488 (Fla. 1st DCA 2006) (citing Rule 23-21.0155(3), the court found that the Commission apparently conceded that its own rules required an extraordinary review within two years rather than five).  This apparent state law procedural right, however, does not give rise to a federal constitutional claims for the reasons discussed above.

Resolution of each of the claims raised in this case in Defendants' favor necessarily requires denying Plaintiff's cross motion for summary judgment, doc. 20.  As the defenses presented by Defendant are legally sufficient, Plaintiff is not entitled to summary judgment.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants amended motion for summary judgment, doc. 14, be **GRANTED**, that Plaintiff's cross motion for summary judgment, doc. 20, be **DENIED as moot**, and the Clerk of Court directed to enter judgment in favor of the Defendants on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on August 2, 2006.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**